RECEIVED
FEB 19 2026
PRO SE OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GUJARATI, J.

CHO, M.J.

**DEVORA SHABTAI,**

**Plaintiff,**

**vs.**

**COMPLAINT**
**JURY TRIAL DEMANDED**

**Civil Action No.** CV 26-983

**CITY OF NEW YORK; POLICE OFFICER VALERA; POLICE OFFICER MOHAMMED RASHID; POLICE OFFICER ELHINDI (shield 27978); POLICE OFFICER ALVA (shield 11022); POLICE OFFICER ALGAHIEM (shield 3001); POLICE OFFICER RIVERA (shield 25219); POLICE OFFICER RAHIM (shield 5216); POLICE OFFICER BRANDON RAYSOR; LIEUTENANT PLOUGH; DETECTIVE CAROLINE CLARK; DETECTIVE KAREEM HIBBERT; DETECTIVE DIARO; DETECTIVE LINDEN; DETECTIVE KENNETH SPAETH; SERGEANT JOEL MAKOU; SERGEANT MERVIS; OFFICER COLON; and JOHN/JANE DOE OFFICERS 1–10;**
**and**
**ANTHONY VERDINO; JOSEPH WOLFGANG; MICHAEL BUSCARELLO; FRANK CRACCHIOLO: JENNIFER CRACCHIOLO; SHIRLEY CHARLES; YOURI FLEURY; ELIZABETH EAVERONE; JOHN EAVERONE; ESTHER REVASCH; MALKA KATZ; BATYA GRUBIN; ZEHAVIT MICHAEL.** Taylor Cassanova, Tracy Cassanova
**Defendants.**

---

## I. NATURE OF THE ACTION

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and § 1985 for violations of Plaintiff's Fourth and Fourteenth Amendment rights.

2. Plaintiff also asserts supplemental state law claims for false imprisonment, malicious prosecution, abuse of process, defamation, fraudulent inducement, negligent misrepresentation, unlawful eviction, trespass, and intentional infliction of emotional distress.

3. This case arises from a coordinated campaign to dispossess Plaintiff from her home through harassment, false reporting, selective enforcement, and misuse of police power.

## II. JURISDICTION AND VENUE

REC'D IN PRO SE OFFICE
FEB 19 '26 PM12:00

**Address of Defendants**

1. Plaintiff Devora Shabtai is a resident of Kings that lives at 2118 East 69th Street, Apt 2, Brooklyn, New York 11234.

2. Defendant City of New York is a municipal entity that will be represented by The New York City Law Department, 100 Church Street, New York, NY 10007.

3. Defendants Officer Valera, Officer Mohammed Rashid, Officer Brandon Raysor, Police Officer Elhindi, Police officer Rahim; Police Officer Alva; Police Officer Rivera; Lieutenant Plough, Detective Caroline Clark, Detective Diaro, Detective Kareem Hibbert, Sergeant Joel Makou, Officer Colon, Officer Elhindi, Officer Thomas, Officer Solismedina, Officer Guerrier, Officer Ramhan, Officer Denardo, Sergeant Gabriel, Sergeant Mervis, Detective Linden, and John/Jane Doe officers were at all relevant times NYPD employees acting under color of state law that will be represented by the New York City Law Department, 100 Church Street, New York, NY 10007.

4. Defendant Anthony Verdino address is 2118 East 69th Street, Apt 2, Brooklyn, New York 11234. He lives at the first-floor duplex apartment of Apartment 2.

5. Defendant Joseph Wolfgang address is 2118 East 69th Street, Apt 1, Brooklyn, New York 11234.

6. Defendant Michael Buscarello address is 2118 East 69th Street, Apt 1, Brooklyn, New York 11234.

7. Defendant Frank Cracchiolo lives at 2118 East 69th Street, Apt 1, Brooklyn, New York 11234.

8. Defendant Jennifer Cracchiolo lives at 2114 East 69th Street, Apt 3, Brooklyn, New York 11234.

9. Defendant Shirley Charles lives at 2118 East 69th Street, Apt 3, Brooklyn, New York 11234.

10. Defendant Youri Fleury lives at 2118 East 69th Street, Apt 3, Brooklyn, New York 11234.

11. Defendant Elizabeth Eaverone lives at 45 Pioneer Blvd, Huntington Station, New York, 11746.

12. Defendants John Eaverone lives at 45 Pioneer Blvd, Huntington Station, New York, 11746.

13. Defendants Taylor Cassanovova lives at 2114 East 69th Street, Apt 2, Brooklyn, New York 11234.

14. Defendants Tracy Cassanova lives at 2114 East 69th Street, Apt 2, Brooklyn, New York 11234.

15. Defendant Malka Katz lives at 952 East 84th Street, Brooklyn, New York 11236.

16. Defendant Esther Revasch lives at 2280 National Drive, Brooklyn, New York 11234.

17. Defendant Batya Grubin lives 1439 East 69th Street, Brooklyn, New York 11234.

18. Defendant Zehavit Michael a/k/a Goldie Shabtai lives at Yochanan Beder, 59/4, Ramat Gan, Israel

4. Jurisdiction is proper under 28 U.S.C. § 1331.

5. Supplemental jurisdiction exists under 28 U.S.C. § 1367.

6. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b).

## III. PARTIES

7. Plaintiff Devora Shabtai is a resident of Brooklyn, New York.

8. Defendant City of New York is a municipal entity responsible for the policies, customs, training, supervision, and discipline of the New York City Police Department.

9. Defendants Officer Valera, Officer Mohammed Rashid, Officer Brandon Raysor, Police Officer Elhindi, Police officer Rahim; Police Officer Alva; Police Officer Rivera; Lieutenant Plough, Detective Caroline Clark, Detective Diaro, Detective Kareem Hibbert, Sergeant Joel Makou, Officer Colon, Officer Elhindi, Officer Thomas, Officer Solismedina, Officer Guerrier, Officer Ramhan, Officer Denardo, Sergeant Gabriel, Sergeant Mervis, Detective Linden, and John/Jane Doe officers were at all relevant times NYPD employees acting under color of state law.

10. Defendant Anthony Verdino is a private individual who acted jointly with NYPD Defendants.

11. Defendant Joseph Wolfgang is a convicted felon and parolee who acted jointly with Verdino, Buscarello and NYPD Defendants.

12. Defendant Michael Buscarello is a civilian actor who made false complaints and coordinated surveillance.

13. Defendant Frank Cracchiolo submitted false affidavits and assisted Verdino, Buscarello and Wolfgang in contacting the NYPD, HPD and DOB.

14. Defendant Jennifer Cracchiolo knew and supported defendant Frank Cracchiolo's actions against plaintiff while he went from his wife's apartment to plaintiff's premises.

15. Defendant Shirley Charles provided access and facilitated unauthorized occupancy and nighttime clubbing.

16. Defendant Youri Fleury is an unauthorized occupant acting in concert with co-defendants.

17. Defendants Elizabeth did not want her son in her house and provided resources, shelter, and encouragement to Verdino.

18. Defendants John Eaverone did not want his stepson in his house and provided resources, shelter, and encouragement to Verdino.

19. Defendants Taylor Cassanova participated in harassment, false reporting, and intimidation.

20. Defendants Tracy Cassanova participated in harassment, false reporting, and intimidation.

21. Defendant Aaron Akaberi who was living in the garage was allowed into plaintiff's apartment by defendant Verdino, his close friend.

22. Defendant Malka Katz introduced **Joseph Wolfgang** into matters involving plaintiff's home and property (the "Property"), and inducing her reliance through material misrepresentations.

23. Defendant Esther Revasch introduced **Joseph Wolfgang** into matters involving plaintiff's home and property (the "Property") and inducing her reliance through material misrepresentations.

24. Defendant Batya Grubin introduced **Anthony Verdino** into matters involving plaintiff's home and property (the "Property") and inducing her reliance through material misrepresentations.

25. Defendant Aaron Akaberi (deceased) engaged in conduct that included intimidation, harassment, and interference with Plaintiff's possessory rights.

26. Defendant Zehavit Michael a/k/a Goldie Shabtai financed and orchestrated portions of the scheme in connection with probate-related disputes.

## IV. FACTUAL ALLEGATIONS

### A. Background and Property

27. Plaintiff Devora Shabtai is the lawful possessor of the residential property located at 2118 East 69th Street, Brooklyn, New York (the "Property").

28. Following the death of Plaintiff's father in or about October 2019, disputes arose concerning the Property and the administration of the estate.

29. During this vulnerable period, Defendant Zehavit Michael a/k/a Goldie Shabtai began taking steps to interfere with Plaintiff's possession and control of the Property.

30. Beginning in or about 2019–2020, Defendants Taylor Cassanova and Tracy Cassanova, who resided next door, began engaging in a pattern of harassment, verbal abuse, intimidation, and false reporting directed at Plaintiff.

31. On July 18, 2022, Defendant Taylor Cassanova physically struck Plaintiff on the head during one such confrontation, an incident captured on video.

32. Detective Spaeth's refusal to act despite clear video documentation of an assault stands in contrast to the rapid arrests of Plaintiff based solely on uncorroborated accusations by the same group of civilian Defendants.

33. This differential treatment supports a reasonable inference that Plaintiff's complaints were not afforded equal investigative weight.

34. The Cassanovas repeatedly contacted City agencies, including 311 and the Department of Buildings, making false claims of illegal construction at Plaintiff's Property.

35. As a result of these knowingly false complaints, Plaintiff received multiple summonses and was forced to expend time and resources responding to baseless violations.

36. The Cassanovas openly stated that Defendant Zehavit Michael would financially reward them for assisting in the harassment and dispossession of Plaintiff.

**Approach and Presentation as Real Estate Professionals**

37. Upon information and belief, in or about November 2023, Defendants Esther Revasch and Malka Katz personally approached plaintiff and presented themselves as trusted intermediaries with experience in real estate matters.

38. Based on their statements, manner of presentation, and the context in which they approached plaintiff, Defendants Revasch and Katz held themselves out as individuals acting in a real estate professional capacity.

39. Defendants Revasch and Katz introduced Joseph Wolfgang to plaintiff in connection with her Property and encouraged his presence and involvement.

**B Specific Representations Used to Induce Trust and Access**

40. To induce plaintiff's trust and her safety concerns, Defendants Revasch and Katz represented to plaintiff, in substance, that:

a. They had known Joseph Wolfgang since childhood, including that they had known him "since he was seven years old";
b. He had been bar-mitzvahed at their synagogue in Canarsie; and
c. He came from a stable and respectable family background.

41. These representations were conveyed for the purpose of establishing credibility and persuading plaintiff to permit Joseph Wolfgang access and involvement in matters relating to her property

**Falsity and Omitted Information Learned After Reliance**

42. After relying on these representations, Plaintiff later learned information that contradicted what Defendants Revasch and Katz told her.

43. Upon information and belief, Joseph Wolfgang is not Jewish and was not bar-mitzvahed at the synagogue referenced.

44. Plaintiff learned that Defendants Revasch and Katz did not know Joseph Wolfgang in the manner or for the length of time represented to her.

45. Plaintiff learned that Joseph Wolfgang's wife and children were estranged from him during portions of the relevant period, contradicting the image of family stability that had been conveyed.

46. Plaintiff was also advised by Kfir, the husband of defendant Malka Katz, that he did not want Joseph Wolfgang in his own home and stated in substance that Wolfgang was known to him as a car thief.

47. After Wolfgang gained access to the Property, plaintiff communicated escalating safety concerns to Esther Revasch.

48. Plaintiff informed Defendant Revasch that she believed Joseph Wolfgang posed a danger based on conduct she observed and expressed that she feared for her personal safety.

49. Plaintiff informed Defendant Esther Revasch that Defendant Joseph Wolfgang had brought additional unauthorized individuals onto the Property without Plaintiff's consent.

50. Plaintiff specifically advised Defendant Revasch that Defendant Michael Buscarello had begun occupying or frequenting portions of the Property without Plaintiff's authorization.

51. Plaintiff further informed Defendant Revasch that Buscarello had previously resided for an extended period on another property under circumstances that, upon information and belief, involved rent-free occupancy and subleasing arrangements.

52. Plaintiff expressed concern that Buscarello's presence at the Property was unauthorized and contributed to escalating interference with Plaintiff's possessory rights.

53. Plaintiff later learned that Defendants Wolfgang and Buscarello both had ongoing substance abuse issues and a history of violent or erratic behavior.

54. Despite receiving this information, Defendant Revasch did not intervene, withdraw support, or assist in addressing the unauthorized occupancy.

55. Upon information and belief, Defendant Revasch continued to support or defend Wolfgang's involvement despite knowledge that additional unauthorized individuals were being brought into the Property.

56. Defendant Revasch strongly defended Wolfgang and asserted that he had a heart condition, suggesting that he was not physically capable of the conduct plaintiff described.

57. Plaintiff requested that Kfir, Defendant Katz husband personally speak to Joseph Wolfgang and intervene to have him leave the Property.

58. Kfir, Defendant Katz husband declined to intervene and stated in substance that Joseph Wolfgang had indicated he would refuse to leave the premises "at all costs."

59. That statement significantly increased plaintiff fear and confirmed that Wolfgang intended to remain regardless of her objections.

60. Had Defendants Revasch and Katz disclosed accurate information or withdrawn their support, plaintiff would not have permitted Wolfgang access to her Property.

**Licensing Concerns: Unlicensed Real Estate Activity**

61. Plaintiff became concerned that neither Esther Revasch nor Malka Katz holds a valid New York real estate broker or salesperson license.

62. Their approach to plaintiff, their representations, and their role in introducing and placing Joseph Wolfgang into property-related matters appeared to constitute activity requiring licensure and professional regulation.

63. Upon information and belief, if they were not licensed, they were acting outside lawful authority and without the consumer protection required of licensed real estate professionals.

**Resulting Harm and Connection to Broader Conduct**

64. As a direct and proximate result of plaintiff reliance on their representations, Joseph Wolfgang gained access to her Property.

65. After his involvement began, plaintiff experienced escalating safety concerns, unauthorized access, interference with utilities and building systems, harassment, and retaliatory conduct.

66. Plaintiff experienced reputational harm and legal disputes arising from coordinated narratives and complaints.

67. Upon information and belief, the conduct of Defendants Revasch and Katz substantially assisted Wolfgang's access and participation in the broader events described in her Complaint.

68. This Declaration is offered to establish the misrepresentations, inducement, and role Defendants Esther Revasch and Malka Katz as part of the civilian coordination alleged in plaintiff expanded EDNY pleading.

**MISREPRESENTATIONS BY DEFENDANT GRUBIN**

(Introduction of Verdino and Omission of Material Facts)

69. In or about late January 2024, Defendant Grubin, a licensed real estate salesperson, introduced Defendant Anthony Verdino into matters involving Plaintiff's Property.

70. At the time of introduction, Defendant Grubin represented in substance that Verdino's mother, Elizabeth Eaverone, would be responsible for payment of rent.

71. Plaintiff relied on Defendant Grubin's professional status as a licensed real estate salesperson and on the representations made concerning rent responsibility and financial reliability.

72. Defendant Grubin did not disclose material information concerning Verdino's payment history or prior issues.

73. Upon information and belief, Defendant Verdino failed to pay rent owed to Defendant Grubin for the three months preceding his introduction to Plaintiff.

74. Plaintiff was not informed of any prior nonpayment issues at the time Verdino was introduced into Plaintiff's Property.

75. Plaintiff later learned that Defendant Verdino had ongoing substance abuse issues and a history of violent or erratic behavior.

76. Plaintiff further learned, upon information and belief, that Defendant Elizabeth Eaverone was aware of her son's conduct and continued to support or enable his presence.

77. Plaintiff also became aware of allegations involving Defendant Grubin's minor child, including concerns about inappropriate exposure to unlawful activity and repeated police involvement. Plaintiff was not informed of these concerns at the time of introduction.

78. Approximately six months later, in or about July 2024, after Defendant Verdino had gained access to Plaintiff's apartment and Property, Plaintiff learned that:

a. Verdino had previously failed to pay rent to Defendant Grubin;
b. Serious concerns existed regarding Verdino's behavior and substance use; and
c. Defendant Grubin had knowledge of ongoing issues involving her son.

79. Had Plaintiff been informed of these material facts, Plaintiff would not have permitted Verdino access to her Property.

80. As a direct and proximate result of Defendant Grubin's introduction and omissions of material facts, Plaintiff suffered financial loss, property interference, safety concerns, and subsequent legal disputes described throughout this Complaint.

81. Defendant Grubin's conduct, as a licensed real estate salesperson, constituted negligent misrepresentation and breach of professional duty.

82. In or about 2024, Defendant Anthony Verdino gained access to the Property under false pretenses and shortly thereafter began asserting unauthorized control over common areas.

83. Verdino boasted to Plaintiff that he was actively using heroin, had been arrested approximately forty-eight times, engaged in burglary and vehicle thefts, and could avoid consequences through connections via his stepfather, Defendant John Eaverone.

84. Plaintiff observed marks on Verdino's arms consistent with intravenous drug use and became fearful of her safety.

85. Defendant Verdino, without Plaintiff's authorization, allowed his associate Aaron Akaberi, who resided in the garage, to access Plaintiff's apartment, use Plaintiff's washer and dryer, tamper with the security system, and bring unidentified men to sleep on Plaintiff's couch.

86. Wolfgang had recently completed a fifteen-year prison sentence and was on seven years' parole during portions of the relevant period.

87. Plaintiff later learned that Defendant Wolfgang had ongoing substance abuse issues and a history of violent or erratic behavior.

**Selective Enforcement September 17, 2025**

88. On January 4, 2025, Plaintiff had a valid Criminal Court Order of Protection against Aaron Akaberi.

89. Despite knowledge of the Order of Protection, Defendant Anthony Verdino knowingly permitted Aaron Akaberi to enter and remain on the premises.

90. On September 17, 2025, Plaintiff observed through her Ring camera Defendant Verdino provide Aaron Akaberi with tools belonging to Plaintiff's father.

91. Plaintiff reported this incident as a violation of the Order of Protection and unauthorized presence at the Property.

92. No arrest or enforcement action was taken despite the existence of the Order of Protection.

**Defendant Buscarello surveillance of residences**

93. Beginning January 2025, Defendant Buscarello began frequenting the Property daily and conducting surveillance of surrounding residences using a motorized scooter.

94. Plaintiff observed Buscarello repeatedly circling the neighborhood multiple times per day, behavior consistent with casing properties for burglary.

95. Defendant Verdino, Wolfgang, and Buscarello began occupying portions of the Property without Plaintiff's consent and inviting additional unauthorized individuals.

96. Defendant Shirley Charles facilitated access to third-floor areas and distributed keys to unknown persons, effectively operating an unauthorized short-term rental scheme.

97. Upon information and belief, Defendant Joseph Wolfgang acted in concert with Defendant Shirley Charles in bringing additional individuals into the Property without Plaintiff's authorization.

98. Defendant Wolfgang introduced or permitted the presence of Defendant Frank Cracchiolo, Defendant Michael Buscarello, William Leonardi, and other individuals to occupy or frequent portions of the Property without Plaintiff's consent.

99. These individuals were not approved by Plaintiff and were not authorized tenants.

100. Upon information and belief, these actions were coordinated among civilian Defendants and were part of a broader effort to exert pressure on Plaintiff and destabilize her possessory control over the Property.

101. On or about December 19, 2025, Plaintiff changed a lock on the Property after obtaining permission from responding NYPD officers.

102. Shortly thereafter, Defendant Anthony Verdino broke the newly installed lock.

103. Despite Verdino's destruction of the lock, Verdino reported to police that Plaintiff had illegally evicted him. On or about December 24, 2025, individual identified as defendant Youri Fleury made complaint to law enforcement alleging unlawful eviction when no lock was changed.

104. On December 23, 2025, defendant Buscarello alleged that his lock was changed when no illegal eviction and no lock was changed. The locksmith from Instalock has all the before and after pictures to prove it.

105. On or about December 24, 2025, police were contacted again regarding similar allegations and plaintiff was arrested on January 14, 2026.

106. Plaintiff alleges that these complaints repeated substantially similar accusations and were coordinated.

107. Upon information and belief, on January 29, 2025, Defendant Shirley Charles, Defendant Wolfgang, and Defendant Cracchiolo also made accusations that Plaintiff was stealing mail. Plaintiff denies those allegations.

108. Plaintiff alleges that repeated and similar accusations were made in concert for the purpose of generating police intervention and creating a record portraying Plaintiff as the wrongdoer.

109. The pattern of coordinated complaints resulted in disproportionate police attention directed at Plaintiff and contributed to the arrests and enforcement actions described elsewhere in this Complaint.

**Nighttime Disturbances, Unauthorized Subleasing, and Coordinated Interference**

110. Upon information and belief, Defendant Shirley Charles subleased the apartment to individuals identified to Plaintiff as Mariannie Pyrrhonhudson, Youri Fleury, Gina Valcy and Marie Lucie Valcy without Plaintiff's authorization.

111. During the period of such subleasing, which lasted approximately eighteen months, Plaintiff observed and documented repeated late-night disturbances, including loud amplified music, heavy foot traffic, and individuals entering and exiting the premises at frequent intervals during overnight hours.

112. The volume of the music was, on numerous occasions, excessive and continued into early morning hours, interfering with Plaintiff's quiet enjoyment of the Property.

113. Plaintiff further observed individuals carrying alcoholic beverages to and from the premises, and on multiple occasions glass beer and liquor bottles were thrown or discarded in or around the Property.

114. Upon information and belief, Defendants Taylor Cassanova, Tracy Cassanova, and Frank and Jennifer Cracchiolo acted in concert with Defendant Charles in contributing to and/or encouraging the late-night disturbances.

115. During this same period, Defendant Aaron Akaberi tampered with or interfered with Plaintiff's security system, including actions that disrupted camera visibility and recording capability.

116. Plaintiff alleges that the interference with the security system occurred contemporaneously with the late-night traffic and disturbances, thereby preventing Plaintiff from fully documenting the number of individuals entering and exiting the premises.

117. Plaintiff reasonably believes that the excessive noise and coordinated conduct were undertaken in part to mask or obscure activity occurring within the apartment and to prevent Plaintiff from maintaining accurate surveillance documentation.

**Nighttime Disturbance, Commercial Activity, and Police Non-Response**

118. Upon information and belief, beginning in or about mid-2024 and continuing for approximately eighteen (18) months thereafter, Defendant Shirley Charles permitted and/or facilitated ongoing late-night commercial activity within the premises in concert with Defendant Youri Fleury, who represented himself to others as a "pimp."

119. During this period, loud music was played at excessive volume levels approximately five (5) nights per week, typically beginning at approximately 4:30 p.m. and continuing until approximately 6:00 a.m. the following morning.

120. Numerous unknown adult males repeatedly knocked on Plaintiff's door at late-night and early-morning hours seeking Defendant Fleury and other individuals associated with the premises.

121. Plaintiff was regularly deprived of sleep due to sustained blasting music, heavy pounding on floors and walls, and repeated disturbances throughout the night.

122. On April 1, 2025, Plaintiff entered the third-floor apartment at the Property accompanied by a plumber for the purpose of addressing toilet repair. Defendant Charles had 11 toilet repairs in a span of two years due to the traffic in the apartment.

123. Upon entering the apartment, Plaintiff observed the minor child of Defendant Shirley Charles seated on a chair within the apartment. Plaintiff also observed two adult females and their respective children seated on the floor in the same apartment.

124. Upon information and belief, the third-floor apartment was being used for gatherings involving multiple unrelated adults and children.

125. On April 1, 2025, defendant Charles was upset that plaintiff and her plumber showed up to her apartment witnessing her daughter seated on a chair while two adult females and their children were seated on the floor.

126. Plaintiff observed Defendant Charles enter the apartment in an agitated state and advance toward the plumber in a threatening manner. Plaintiff observed Defendant Charles raise her arm and move toward the plumber as if to strike him.

127. Defendant Youri Fleury and Defendant Charles's daughter physically intervened and restrained Defendant Charles before physical contact occurred.

128. The plumber appeared visibly alarmed and expressed concern regarding Defendant Charles's conduct.

129. The plumber further stated to Plaintiff that he had performed multiple repair jobs for Defendant Charles and had been required to return repeatedly, which he believed was not accidental.

130. As a result of Defendant Charles's unauthorized entry and aggressive conduct, Plaintiff's ability to complete necessary repairs within her residence was disrupted.

131. Plaintiff became concerned that the minor child was present during late-night gatherings and adult activities occurring within the apartment.

132. Plaintiff further became concerned that the minor child appeared to be present during periods in which adult occupants were hosting nighttime social gatherings that generated noise and disturbances affecting the Property.

133. Plaintiff observed that such gatherings contributed to nighttime disruptions and interference with Plaintiff's ability to sleep and peacefully enjoy her residence.

134. On February 15, 2026, at approximately 12:30 a.m., Plaintiff overheard an adult male yelling aggressively at multiple female individuals for approximately fifteen (15) minutes. Fearing for the safety of the individuals involved and concerned for her own safety, Plaintiff contacted the NYPD.

135. NYPD officers did not arrive at the scene until approximately 3:01 a.m., at which time Plaintiff was no longer awake, and no follow-up investigation was conducted with Plaintiff to document her complaint.

136. The ongoing nighttime disturbances materially interfered with Plaintiff's use and enjoyment of her property, caused substantial emotional distress, and created ongoing safety concerns.

**False Affidavits and Coordinated Reporting**

137. Upon information and belief, Defendants Frank Cracchiolo and Jennifer Cracchiolo submitted sworn affidavits and statements to law enforcement and municipal agencies, including the NYPD, HPD, and the Department of Buildings (DOB), concerning Plaintiff and the Property.

138. Plaintiff alleges that the affidavits and statements submitted by the Cracchiolos contained materially false and misleading representations of fact.

139. Upon information and belief, Defendants Frank Cracchiolo and Jennifer Cracchiolo acted in concert with Defendants Anthony Verdino, Michael Buscarello, and Joseph Wolfgang in making and/or supporting reports to the NYPD, HPD, and DOB regarding Plaintiff.

140. Almost daily for a year, Defendant Frank Cracchiolo went from his wife's apartment, defendant Jennifer Cracchiolo at 2114 East 69th Street to 2118 East 69th Street and physically appeared at or near the Property in connection with

efforts to pressure, intimidate, or otherwise facilitate Plaintiff's removal from the premises.

141. Upon information and belief, Defendant Frank Cracchiolo represented to others that he was separated from his wife and was frequently present next door for personal reasons unrelated to his residence. Plaintiff alleges that Defendant Cracchiolo's repeated presence at the Property was not incidental but was undertaken in coordination with other Defendants and in connection with efforts to intimidate and harass Plaintiff.

142. Plaintiff alleges that these coordinated actions were undertaken for the purpose of interfering with Plaintiff's lawful possession and occupancy of the Property.

143. Defendants Elizabeth and John Eaverone provided Verdino with shelter, encouragement, and resources while knowing of his violent conduct and drug use.

144. These civilian defendants coordinated their presence and activities at the Property and began acting in concert.

145. Beginning in early 2024, Plaintiff experienced repeated interference with building systems, including heating, electrical access, and air filtration.

146. Plaintiff discovered that Defendants had obstructed access to her heating unit, preventing licensed electricians from conducting inspections.

147. On or about April 15, 2025, following tampering with electrical and heating systems by Wolfgang, Buscarello, and Verdino, Wolfgang made a false report to Con Edison alleging that Plaintiff was stealing electricity.

148. As a result of Wolfgang's false report, Con Edison initiated a "shared meter" investigation against Plaintiff.

149. Plaintiff attempted to retain a licensed electrician to demonstrate that Defendants had tampered with the system but was prevented from doing so because Defendants physically blocked her access to the heating unit.

150. These acts were undertaken deliberately to manufacture claims against Plaintiff and create a false paper trail portraying Plaintiff as the wrongdoer.

151. In parallel, Defendants Wolfgang, Buscarello, Verdino, Charles, Taylor Cassanova, Tracy Cassanova, and Elizabeth Eaverone coordinated repeated false complaints to NYPD, HPD, DOB, and FDNY.

152. Plaintiff states under penalty of perjury that hundreds of such complaints were orchestrated over time.

153. The volume of these coordinated complaints caused NYPD officers to begin disregarding Plaintiff's legitimate calls for help while responding favorably to Defendants' accusations.

154. Within an approximately eighteen-month period, Plaintiff was subjected to five multiple arrests without probable cause, each originating from the same group of civilian Defendants.

155. These arrests were retaliatory in nature and intended to intimidate Plaintiff, remove her from the Property, and interfere with her lawful possessory rights.

156. Defendants' strategy relied on complaint volume rather than evidence, and on selective enforcement by NYPD personnel.

157. In September 2024, Verdino attempted to have Plaintiff involuntarily committed by summoning multiple NYPD officers to the Property and falsely claiming Plaintiff required psychiatric evaluation.

158. Plaintiff's attorney intervened, preventing Plaintiff's involuntary removal.

159. This attempt further demonstrates Defendants coordinated effort to portray Plaintiff as unstable to justify removing her from her home.

160. During this same period, Defendants began spreading false statements to neighbors, contractors, and City agencies accusing Plaintiff of serious misconduct, including homicide.

161. Defendant Frank Cracchiolo submitted affidavits repeating these defamatory claims.

162. Defendant Elizabeth Eaverone sent written communications making the same accusations.

163. Defendants Taylor Cassanova and Tracy Cassanova verbally accused Plaintiff of killing her father during confrontations.

164. These statements were knowingly false and intended to destroy Plaintiff's reputation and credibility with law enforcement.

165. On August 10, 2025, Plaintiff reported these coordinated defamatory attacks to NYPD personnel, including Sergeant Mervis.

166. Sergeant Mervis responded by threatening Plaintiff with involuntary psychiatric commitment if she did not leave the precinct.

167. Plaintiff reported Sergeant Mervis's conduct to Internal Affairs.

168. No corrective action was taken.

169. As a result of Defendants coordinated campaign, Plaintiff lived in constant fear inside her own home, was repeatedly targeted by law enforcement based on false accusations and was progressively stripped of access to essential services and legal protections.

**ASSAULTS, THREATS, UTILITY SABOTAGE, RETALIATION, AND NYPD NON-ENFORCEMENT (APRIL–DECEMBER 2025)**

170. Beginning in April 2025, Defendant Anthony Verdino initiated an escalating pattern of physical violence, intimidation, retaliation, and interference with essential services against Plaintiff, while NYPD Defendants repeatedly refused to arrest Verdino, downgraded felony conduct to "harassment," and selectively enforced laws against Plaintiff.

171. On April 4, 2025, Defendant Verdino physically assaulted Plaintiff by forcefully pushing Plaintiff out of the laundry room while appearing to be under the influence of drugs. Defendant Joseph Wolfgang personally witnessed this assault.

172. On April 25, 2025, Defendant Verdino again physically assaulted Plaintiff by forcibly pushing Plaintiff out of Plaintiff's own laundry room while again appearing to be under the influence of drugs.

173. Defendant Verdino is approximately six feet five inches tall, while Plaintiff is approximately five feet four inches tall and weighs approximately 127 pounds, creating a substantial physical disparity.

174. Defendant Verdino's conduct was aggressive, erratic, and intimidating, causing Plaintiff to reasonably fear for her personal safety.

175. Plaintiff filed two separate police reports regarding the April assaults. Law enforcement personnel classified Defendant Verdino's conduct merely as harassment.

176. On May 4, 2025, Defendant Verdino physically assaulted Plaintiff by pushing Plaintiff down the stairs and verbally threatened Plaintiff by stating, "I will make you suffer."

177. At the time of the May 4 assault, Defendant Verdino again appeared to be under the influence of drugs.

178. Plaintiff reasonably feared serious bodily injury or death because of Defendant Verdino's actions.

179. Plaintiff has a history of two cervical spine surgeries and a prior heart operation, rendering Defendant Verdino's repeated assaults and threats especially dangerous and life-threatening.

180. As a direct result of Defendant Verdino's conduct, Plaintiff became terrified inside her own home and no longer felt safe in her residence.

181. On June 16, 2025, Defendant Verdino physically assaulted Plaintiff by body-slamming her, an act of violence captured on Plaintiff's security camera footage.

182. Despite video evidence and the clear disparity in size, strength, and age between Defendant Verdino and Plaintiff, NYPD personnel again classified the incident as harassment and refused to arrest Defendant Verdino.

183. The NYPD's repeated refusal to arrest Defendant Verdino despite multiple documented assaults demonstrated deliberate indifference to Plaintiff's safety.

184. Defendant Verdino's acts of physical violence constituted an escalating pattern of conduct, leaving Plaintiff without adequate protection and in continued fear.

**September 25, 2025 Assault by Buscarello and Retaliatory Threat**

185. On September 25, 2025, Defendant Michael Buscarello physically assaulted Plaintiff while Plaintiff was attempting to replace batteries in a Ring security camera installed at the Property.

186. At the time of the incident, Plaintiff was standing on a chair positioned near the entrance area of the Property. Defendant Buscarello forcefully knocked Plaintiff out of the chair.

187. Defendant Buscarello then swung the door into Plaintiff's arms while repositioning or manipulating the Ring camera. As a result of the incident, Plaintiff experienced physical pain and fear for her safety.

188. Plaintiff reported the incident to the New York City Police Department and was assigned complaint number 2025-63-5308. A detective responded to the complaint.

189. Despite Plaintiff's report of a physical assault, the responding detective declined to arrest Defendant Buscarello. Instead, the detective stated to Plaintiff,

in substance, "If you continue with the complaint, I will arrest you for false reporting."

190. The detective's statement intimidated Plaintiff and discouraged further pursuit of criminal charges. Upon information and belief, no meaningful investigation was conducted regarding Plaintiff's complaint.

191. This incident further reflects the pattern alleged herein, whereby civilian defendants were shielded from accountability while Plaintiff was threatened with arrest for asserting her rights.

**October 3, 2025, Assault and False Report**

192. On Friday, October 3, 2025, Plaintiff was present at or near the Property when she heard William Leonardi screaming that he was being assaulted.

193. Plaintiff recognized Mr. Leonardi's voice and heard repeated cries for help.

194. During this same time, Plaintiff heard sounds consistent with a physical altercation. Plaintiff further heard Defendant Michael Buscarello present at the scene.

195. Plaintiff heard Defendant Frank Cracchiolo speaking on the phone. Plaintiff heard Defendant Cracchiolo state "William Leonardi is coming after him with a knife."

196. Plaintiff alleges that this statement was made while Mr. Leonardi was audibly screaming that he was being assaulted.

197. Upon information and belief, the statement made by Defendant Cracchiolo was communicated to law enforcement. Plaintiff did not observe Mr. Leonardi armed with a knife at the time she heard him screaming.

198. Plaintiff alleges that the statement that Mr. Leonardi was "coming after [someone] with a knife" was false and was made to justify or conceal the assault occurring at that time.

199. During the altercation, Defendant Buscarello forcibly grabbed Mr. Leonardi and dragged him from the apartment.

200. Plaintiff observed Mr. Leonardi's shirt being ripped during the incident.

201. Plaintiff further observed that Mr. Leonardi appeared injured, including visible bleeding from his head and apparent injury to his right arm, which appeared dislocated or otherwise severely impaired.

202. Blood was visible on or around Mr. Leonardi's head and feet following the altercation.

203. Law enforcement officers responded to the scene.

204. Upon information and belief, Defendant Buscarello told responding officers that Mr. Leonardi had approached him with a knife.

205. Plaintiff alleges that this accusation was false.

206. Despite visible injuries to Mr. Leonardi, neither Defendant Buscarello nor Mr. Leonardi was arrested at the scene.

207. Plaintiff is unaware of any documented knife being recovered by responding officers.

**Similar accusations made by defendant Buscarello**

208. Upon information and belief, Defendant Buscarello has previously made similar accusations against other individuals, including an incident involving a relative of his former spouse at the Bergen Café in Mill Basin.

209. Plaintiff further alleges that Defendant Buscarello's failure to be arrested despite visible injuries to Mr. Leonardi reflects unequal or selective enforcement.

210. On November 23, 2025, Defendant Verdino intentionally blocked Plaintiff's access to the heating system, leaving Plaintiff without heat, while Defendant Verdino and his associates—Defendants Joseph Wolfgang, Michael Buscarello, and Frank Cracchiolo—maintained continuous heat at approximately eighty degrees, twenty-four hours per day.

211. Defendant Verdino's conduct deprived Plaintiff of essential services and was undertaken deliberately and without justification.

212. When Plaintiff attempted to resolve the lack of heat, Defendant Verdino retaliated by repeatedly calling the New York City Police Department on Plaintiff.

213. Defendant Verdino's retaliatory police call further harassed Plaintiff and exacerbated her fear and distress.

214. On December 1, 2025, Plaintiff contacted NYPD and Defendant Officer Valera responded to the Property.

215. Plaintiff presented Defendant Officer Valera with time-stamped video surveillance footage dated October 25, 2025; October 27, 2025, at approximately 6:28 p.m. and 6:37 p.m.; and November 25, 2025 at approximately 3:48 p.m.

216. The footage clearly shows Defendant Verdino entering a secure garage area without permission or lawful authority and tampering with and manipulating the building's meter box.

217. The video evidence demonstrates unauthorized entry, trespass, and interference with building infrastructure.

218. Despite being shown this evidence, Defendant Officer Valera refused to take a police report, refused to document the incident, and took no enforcement action regarding Defendant Verdino's unlawful conduct.

219. On December 4, 2025, Defendant Verdino assaulted Plaintiff by spraying a chemical substance directly onto Plaintiff's face and into her eyes.

220. Plaintiff required emergency medical treatment and spent the entire evening in the hospital because of the chemical assault.

221. Despite the seriousness of the assault and resulting medical care, Defendant Officer Valera again classified the incident as "harassment" and declined to arrest Defendant Verdino.

222. On December 5, 2025, Defendant Verdino retaliated by filing a false police report falsely alleging that Plaintiff broke his door.

223. Defendant Verdino repeated the same false accusation on December 7, 2025, claiming Plaintiff broke his screen door.

224. These reports were knowingly false and were made to harass, intimidate, and retaliate against Plaintiff following the chemical assault.

225. NYPD Defendants credited Defendant Verdino's false complaints while continuing to ignore Plaintiff's video evidence, medical documentation, and prior assault reports.

226. The foregoing conduct demonstrates a sustained pattern of violence, retaliation, and intimidation by Defendant Verdino, combined with repeated refusals by NYPD Defendants to enforce the law, accept reports, or arrest Verdino despite clear evidence.

227. NYPD Defendants' actions and omissions constituted deliberate indifference, selective enforcement, and tacit authorization of Defendant Verdino's criminal conduct.

228. Defendant Verdino and NYPD Defendants acted jointly and in concert, with NYPD Defendants providing cover and protection to Verdino while redirecting enforcement efforts toward Plaintiff.

229. These acts were undertaken in furtherance of a shared objective to force Plaintiff from her home and deprive her of her constitutional rights.

230. Plaintiff suffered physical injury, emotional trauma, loss of safety, deprivation of essential services, and ongoing fear as a direct result.

**ORDERS OF PROTECTION, LOCK CHANGE INCIDENT, FALSE COMPLAINTS, AND DECEMBER 2025 ARREST**

231. As Defendant Verdino's violence escalated and NYPD Defendants continued to refuse enforcement, Plaintiff sought judicial protection.

232. On December 16, 2025, Plaintiff obtained a valid Order of Protection against Defendant Anthony Verdino requiring his exclusion from the Property.

233. On December 18, 2025, Plaintiff lawfully served the Order of Protection upon Defendant Verdino.

234. On December 19, 2025, at approximately 4:09 p.m., Plaintiff contacted NYPD to report that Defendant Verdino was present on the Property in violation of the Order of Protection.
235. NYPD personnel responded and remained on scene from approximately 4:10 p.m. until 5:05 p.m.
236. Defendant Lieutenant Plough advised Plaintiff that she accepted Defendant Verdino's claim that the Order of Protection had been dismissed.
237. Defendant Lieutenant Plough made this determination without checking the NYPD system or otherwise verifying the status of the Order.
238. Based solely on Defendant Verdino's unverified representation, Defendant Lieutenant Plough refused to enforce the Order of Protection and allowed Defendant Verdino to remain on the Property.
239. Plaintiff is informed and believes that the Order of Protection was valid and in full power and effect at that time.
240. At approximately 5:38 p.m., Defendant Officer Elhindi and another NYPD officer returned to the Property.
241. Defendant Officer Elhindi immediately stated to Plaintiff, "Why did you go around?" and the accompanying officer repeated the same statement.
242. Plaintiff realized that officers were attempting to falsely arrest her and retreated into a room within her own home.
243. Shortly thereafter, Defendant Lieutenant Plough arrived and stood outside Plaintiff's door while speaking with Defendant Detective Caroline Clark.
244. Defendant Lieutenant Plough stated that Plaintiff had permitted lawful entry and that Plaintiff was inside her room.
245. At this time, Defendants were aware that (a) Plaintiff was inside her own residence, (b) Plaintiff had allowed entry, and (c) Defendant Verdino had been present earlier in violation of a valid Order of Protection.
246. Nevertheless, Defendants failed and refused to remove Defendant Verdino, failed to verify the Order of Protection in the NYPD system, and instead redirected enforcement efforts toward Plaintiff.
247. Defendants' conduct constituted deliberate indifference to Plaintiff's constitutional rights and safety.
248. Defendants consciously disregarded known facts establishing Defendant Verdino's unlawful presence while advancing an attempted arrest of Plaintiff without probable cause.
249. This further constituted selective enforcement, as Defendants chose to credit Defendant Verdino's unsupported claims while treating Plaintiff as the offender.
250. On December 19, 2025, Defendant Michael Buscarello made a false and retaliatory police complaint alleging that Plaintiff assaulted him by striking his eye with a phone.
251. The complaint was made one day after service of Plaintiff's Order of Protection against Defendant Verdino.
252. The complaint was unsupported by probable cause and was part of Defendants coordinated retaliatory campaign.

253. On December 22, 2025, Defendant Detective Caroline Clark failed to interview Plaintiff, failed to ask Plaintiff any questions, and conducted no meaningful investigation.
254. Instead, Defendant Detective Clark relied exclusively on Defendant Buscarello's unverified statements.
255. As a result, Plaintiff was booked and confined for approximately forty-one hours.
256. Plaintiff was denied a desk appearance ticket and subjected to custodial detention.
257. Plaintiff suffered loss of liberty, humiliation, emotional distress, and physical harm as a result.
258. Plaintiff later learned that Defendant Buscarello has an extensive criminal history and acted in coordination with Defendant Joseph Wolfgang.
259. Plaintiff alleges that from approximately February 2025 through October 2025, Defendant Buscarello repeatedly used a motorized scooter to surveil residential properties in the Mill Basin area multiple times per day, in coordination with Defendant Wolfgang, for purposes of identifying burglary targets.
260. On December 23, 2025, Defendant Anthony Verdino made a false complaint alleging that Plaintiff illegally evicted him by changing locks and damaged his property.
261. In fact, Plaintiff and her locksmith changed Plaintiff's own locks only after receiving express permission from responding NYPD officers.
262. Plaintiff personally paid $200 for the replacement lock.
263. Approximately fifteen minutes later, Defendant Verdino broke the newly installed lock.
264. Despite Plaintiff holding a valid Order of Protection requiring Defendant Verdino's exclusion from the Property, NYPD Defendants failed and refused to enforce the Order and permitted Defendant Verdino to remain.
265. Defendant Verdino's false lockout allegation was credited while Plaintiff's lawful actions were treated as criminal.
266. This further demonstrates Defendants' selective enforcement and joint participation in Plaintiff's dispossession.
267. Plaintiff incurred out-of-pocket losses, including the $200 lock replacement, and additional financial harm because of Defendants' conduct.

## JANUARY 2026 REMOVAL FROM HOME, OFFICER COLON MISDIRECTION, AND CONTINUED RETALIATION

140. On January 16, 2026, at approximately 1:45 p.m., Plaintiff was ordered removed from her own residence pursuant to an Order of Protection issued by Judge Dale Fong Frederick.
141. As a direct result, Plaintiff was forcibly excluded from her home for approximately six days, until January 22, 2026.
142. Plaintiff was required to lose an additional day of work to appear in court and seek modification of the Order.

143. Despite Plaintiff's prior valid Order of Protection against Defendant Verdino, NYPD Defendants enforced the January 16, 2026 Order against Plaintiff while continuing to allow Defendant Verdino access to the Property.

144. This disparate treatment further evidences selective enforcement.

145. On Friday, January 16, 2026, Defendant Officer Colon (Badge No. 20259) misinformed Plaintiff that her personal belongings and cellular phone were located at 11 Front Street, Brooklyn.

146. Relying on Defendant Colon's representation, Plaintiff spent approximately three hours traveling back and forth attempting to recover her property.

147. Plaintiff then learned that 11 Front Street is open only Monday through Friday from 8:30 a.m. to 4:00 p.m., rendering retrieval impossible.

148. On Sunday, January 18, 2026, Plaintiff returned to the precinct and again encountered Defendant Officer Colon.

149. Plaintiff presented Defendant Officer Colon with her valid Order of Protection against Defendant Verdino, which expressly prohibited Defendant Verdino from being on the Property.

150. Defendant Officer Colon initially offered to provide Plaintiff with his phone number and requested that Plaintiff send documentation of each time Defendant Verdino entered the premises.

151. Moments later, Defendant Officer Colon reversed course and advised Plaintiff that Sergeant Gabriel had instructed him not to take Plaintiff's report and "not to bother."

152. Plaintiff was thereby denied police services, documentation of violations, recovery of property, and protection of her safety.

153. Plaintiff's exclusion from her home caused emotional distress, disruption of employment, and financial harm.

154. During this same period, Defendants continued coordinating false complaints to City agencies and law enforcement.

155. Defendants' ongoing conduct included intimidation, trespass, obstruction of utilities, and recruitment of third parties to harass Plaintiff.

156. Plaintiff remained under threat of further false arrest and retaliation.

157. Defendants' actions created a climate of fear designed to force Plaintiff to abandon the Property.

158. NYPD Defendants knowingly facilitated this scheme by refusing reports, ignoring Orders of Protection, and crediting Defendants' accusations.

159. Plaintiff's constitutional rights to liberty, property, bodily integrity, and equal protection continued to be violated.

## MULTIPLE FALSE ARRESTS, WARRANTS, EXTENDED DETENTION, AND MEDICAL HARM

160. Plaintiff was subjected to multiple arrests without probable cause, each arising from fabricated civilian complaints initiated by the same group of Defendants and credited by NYPD Defendants without investigation.

161. These arrests occurred on or about July 22, 2024; September 23, 2024; September 26, 2024; December 22, 2025; and January 14, 2026.

162. In each instance, NYPD Defendants failed to review readily available exculpatory evidence, including Ring camera footage, locksmith photographs, medical records, and valid Orders of Protection.
163. Instead, Defendants relied exclusively on uncorroborated accusations by Defendant Verdino, Defendant Buscarello, Defendant Wolfgang, and their associates.
164. On January 8, 2026, Defendant Officer Brandon Raysor advised Plaintiff that two warrants had been issued based solely on these false complaints.
165. Over the following six days, Plaintiff repeatedly attempted to explain the situation and provide documentation establishing her innocence.
166. Defendant Officer Raysor refused to review Plaintiff's evidence or consider Plaintiff's explanations.
167. On January 14, 2026, at approximately 9:00 p.m., Plaintiff was arrested at Kings Plaza based on Defendant Buscarello's false allegations.
168. Defendant Buscarello videotaped Plaintiff's arrest and coordinated service of papers on Plaintiff while she was in custody.
169. Plaintiff was transported to the 63rd Precinct and placed in a holding cell.
170. Plaintiff was denied a desk appearance ticket.
171. Plaintiff remained confined while other arrestees were released.
172. Plaintiff experienced severe migraines and physical distress during detention.
173. Plaintiff was transported to a hospital for treatment because of the detention conditions and stress.
174. NYPD Defendants denied Plaintiff timely access to her phone and personal property.
175. Plaintiff suffered humiliation, fear, emotional trauma, and physical harm.
176. Plaintiff was forced to make repeated court appearances because of Defendants' malicious prosecutions.
177. Plaintiff lived under constant threat of re-arrest due to outstanding warrants generated by Defendants' false complaints.
178. These arrests were retaliatory and intended to punish Plaintiff for enforcing Orders of Protection, reporting assaults, documenting misconduct, and asserting property rights.
179. A reasonable person of ordinary firmness would be deterred from exercising constitutional rights under these circumstances.
180. Defendants' conduct constitutes unlawful seizure, malicious prosecution, and First Amendment retaliation.
181. Defendants knowingly used complaint volume as a substitute for probable cause.
182. Defendant Detective Linden advised Plaintiff in substance that because there were "multiple complaints," Plaintiff had to be arrested.
183. This statement reflects NYPD's policy or custom of relying on complaint volume rather than evidence.
184. NYPD supervisors, including Lieutenant Plough, Sergeant Makou, Sergeant Gabriel, and Sergeant Mervis, failed to intervene to prevent Plaintiff's unlawful arrests.

185. Instead, supervisors ratified subordinate officers' conduct by approving arrests, ignoring evidence, and refusing to discipline involved personnel.
186. Plaintiff's arrests were part of Defendants' coordinated effort to dispossess Plaintiff of her home.
187. Plaintiff incurred medical expenses, lost income, and severe emotional distress as a result.
188. Plaintiff's liberty interests were repeatedly violated.

## DEFAMATION, CIVILIAN COORDINATION, AND ABUSE OF PROCESS

189. In addition to physical assaults and false arrests, Defendants engaged in a coordinated campaign of defamation, intimidation, and misuse of legal and administrative processes to destroy Plaintiff's credibility and force her from the Property.
190. Beginning in or about mid-2025, Defendants Taylor Cassanova, Tracy Cassanova, Michael Buscarello, Elizabeth Eaverone, and Frank Cracchiolo repeatedly accused Plaintiff of having "killed her father."
191. These accusations were communicated verbally to neighbors, repair workers, and members of the community, and were also reduced to writing in affidavits, text messages, and agency complaints.
192. Defendant Frank Cracchiolo submitted an affidavit containing this false accusation.
193. Defendant Elizabeth Eaverone sent written communication repeating the same claim.
194. Defendants Taylor Cassanova and Tracy Cassanova verbally confronted Plaintiff with this accusation during multiple encounters.
195. These statements were knowingly false, made with malice, and intended to damage Plaintiff's reputation, credibility, and standing with law enforcement and City agencies.
196. The statements constitute defamation per se under New York law.
197. Plaintiff suffered reputational harm, emotional distress, and economic injury as a direct result.
198. Defendants also coordinated false reports to the Department of Buildings, Housing Preservation and Development, Fire Department, and utility providers.
199. On September 7, 2025, Defendant Michael Buscarello made a false report to the Fire Department claiming there was a leak when no such leak existed.
200. On December 3, 2025, Defendant Buscarello made a false DOB report alleging an illegal apartment.
201. DOB issued a violation at approximately 9:57 a.m. that same day.
202. Later that evening, Plaintiff observed Defendant Buscarello tear down the posted violation notice.
203. On November 28, 2025, National Grid shut off gas due to nonpayment by third-floor occupants.
204. On December 1 and December 6, 2025, Defendants falsely contacted HPD and DOB alleging Plaintiff had shut off heat, despite the shutoff being caused by nonpayment.

205. These false agency complaints were coordinated to manufacture evidence against Plaintiff and escalate police involvement.

206. Defendants also engaged in witness intimidation.

207. On August 10, 2025, Defendants Tracy Cassanova and Taylor Cassanova confronted Plaintiff and provoked an argument by falsely accusing Plaintiff of killing her father.

208. Plaintiff was accompanied by a witness during this confrontation.

209. Plaintiff went to the local precinct to report these coordinated false accusations and harassment.

210. Plaintiff spoke with Defendant Sergeant Mervis and informed him of what had transpired.

211. Sergeant Mervis responded by threatening Plaintiff with involuntary psychiatric commitment if she did not leave the precinct.

212. Plaintiff reported Sergeant Mervis's conduct to Internal Affairs.

213. No investigation or corrective action was taken.

214. On August 26, 2025, Defendants Verdino, Wolfgang, and Buscarello exited the Property shirtless and aggressively confronted three yeshiva students in a manner suggesting with an intent to provoke a physical altercation.

215. Defendants then contacted police and falsely claimed they feared for their lives and had been assaulted.

216. No assault had occurred.

217. These acts were undertaken to portray Defendants as victims and Plaintiff as a perpetrator.

218. Defendants repeatedly misused criminal, housing, and administrative processes not to achieve legitimate ends, but to coerce Plaintiff into abandoning her home.

219. This misuse of process constitutes abuse of process under federal and New York law.

220. Defendants' conduct was extreme, outrageous, and undertaken with intent to cause or reckless disregard of severe emotional distress.

221. Plaintiff suffered severe emotional distress, including migraines requiring hospitalization.

222. Defendants coordinated acts further demonstrate civil conspiracy, aiding and abetting, and joint participation.

223. Each civilian Defendant knowingly provided substantial assistance to the underlying wrongful acts.

224. NYPD Defendants knowingly joined and furthered these objectives by selectively enforcing laws, refusing to investigate exculpatory evidence, and using complaint volume as a substitute for probable cause.

225. Plaintiff was injured as a direct and proximate result.

## FEDERAL CLAIMS: 42 U.S.C. §1983, §1985, AND MUNICIPAL LIABILITY (MONELL)

### COUNT I – FALSE ARREST / UNLAWFUL SEIZURE

(42 U.S.C. §1983 – Fourth and Fourteenth Amendments)
(Against All NYPD Defendants and Civilian Joint Actors)

226. Plaintiff repeats and realleges paragraphs 1 through 225 as if fully set forth herein.
227. NYPD Defendants, acting under color of law, caused Plaintiff to be seized and arrested on multiple occasions without probable cause.
228. Plaintiff was arrested on or about July 22, 2024; September 23, 2024; September 26, 2024; December 22, 2025; and January 14, 2026.
229. Each arrest was based exclusively on fabricated or retaliatory civilian complaints made by Defendants Verdino, Buscarello, Wolfgang, and their associates.
230. NYPD Defendants failed to conduct any meaningful investigation before arresting Plaintiff.
231. NYPD Defendants failed to interview Plaintiff, failed to seek corroboration, and failed to review readily available exculpatory evidence.
232. Such evidence included Ring camera footage, locksmith photographs, medical records, and valid Orders of Protection.
233. NYPD Defendants relied solely on unverified civilian accusations.
234. Civilian Defendants were willful participants in joint activity with state actors and are liable as §1983 joint actors.
235. Plaintiff was deprived of liberty, subjected to custodial detention, humiliation, and physical harm.
236. Defendants' conduct violated Plaintiff's Fourth and Fourteenth Amendment rights.
237. Plaintiff suffered damages as a direct result.

## COUNT II – MALICIOUS PROSECUTION

(42 U.S.C. §1983 and New York Law)
(Against All Defendants)

238. Plaintiff repeats and realleges paragraphs 1 through 237.
239. Defendants initiated and continued criminal proceedings against Plaintiff without probable cause.
240. Defendants acted with malice and improper purpose, including forcing Plaintiff from her home.
241. Plaintiff suffered post-arraignment liberty restraints, repeated court appearances, detention, and fear of rearrest.
242. Proceedings were terminated in Plaintiff's favor or abandoned.
243. Plaintiff suffered damages.

## COUNT III – FIRST AMENDMENT RETALIATION

(42 U.S.C. §1983) (Against All Defendants)

244. Plaintiff repeats and realleges paragraphs 1 through 243.

245. Plaintiff engaged in protected activity including enforcing Orders of Protection, reporting assaults, seeking police assistance, documenting misconduct, and preparing litigation.

246. Defendants retaliated through threats, false complaints, warrants, arrests, and punitive detention practices.

247. Defendants' retaliatory actions would deter a person of ordinary firmness from exercising constitutional rights.

248. Plaintiff suffered damages.

## COUNT IV – EQUAL PROTECTION / SELECTIVE ENFORCEMENT

(42 U.S.C. §1983 – Fourteenth Amendment)

249. Plaintiff repeats and realleges paragraphs 1 through 248.

250. NYPD Defendants repeatedly refused to enforce Plaintiff's Orders of Protection and refused to credit Plaintiff's video evidence when Plaintiff was the victim.

251. NYPD Defendants repeatedly credited uncorroborated complaints made by Plaintiff's adversaries and treated Plaintiff as the offender.

252. This disparate treatment lacked a rational basis and constituted selective enforcement and deliberate indifference.

253. Plaintiff suffered damages.

## COUNT V – CIVIL RIGHTS CONSPIRACY / JOINT ACTION

(42 U.S.C. §1983)

254. Plaintiff repeats and realleges paragraphs 1 through 253.

255. Defendants reached agreements to deprive Plaintiff of constitutional rights including liberty, property, bodily security, and equal protection.

256. Overt acts included coordinated false police reports; corroboration of fabricated allegations; false DOB, HPD, FDNY, and utility complaints; obstruction of Orders of Protection; destruction of posted violations; witness intimidation; utility interference; and retaliatory arrests.

257. Certain NYPD Defendants knowingly joined and furthered these objectives by selectively enforcing laws, refusing to investigate, and using complaint volume as a substitute for probable cause.

258. Plaintiff suffered damages.

## COUNT VI – CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

(42 U.S.C. §1985)

259. Plaintiff repeats and realleges paragraphs 1 through 258.

260. Civilian Defendants conspired to misuse legal and police processes to deprive Plaintiff of equal protection and property rights.

261. Defendants committed overt acts in furtherance of the conspiracy.

262. Plaintiff was injured as a direct result.

## COUNT VII – MUNICIPAL LIABILITY (MONELL)

(42 U.S.C. §1983 – City of New York)

263. Plaintiff repeats and realleges paragraphs 1 through 262.

264. Defendant City of New York maintained customs, policies, and practices including:

265. a. Reliance on complaint volume rather than evidence;
b. Failure to review exculpatory evidence;
c. Non-enforcement of Orders of Protection;
d. Escalation of landlord-tenant disputes into retaliatory enforcement;
e. Failure to discipline officers engaging in selective enforcement.

266. These policies and failures were moving forces behind Plaintiff's constitutional injuries.

267. The city failed to properly train, supervise, and discipline NYPD personnel.

268. Plaintiff suffered damages as a result.

## NEW YORK STATE LAW CLAIMS

## COUNT VIII – DEFAMATION (LIBEL AND SLANDER PER SE)

(New York Law)
(Against Civilian Defendants)

269. Plaintiff repeats and realleges paragraphs 1 through 268.

270. Civilian Defendants Verdino, Wolfgang, Buscarello, Cracchiolo, Elizabeth Eaverone, Taylor Cassanova, Tracy Cassanova, Shirley Charles, and Zehavit Michael made and published false statements accusing Plaintiff of serious crimes and misconduct.

271. These statements included accusations that Plaintiff "killed her father," damaged property, illegally evicted occupants, and engaged in criminal behavior.
272. The statements were communicated to neighbors, repair workers, law enforcement, City agencies, and third parties.
273. The statements were false, known to be false when made, and published with malice.
274. The statements constitute defamation per se under New York law.
275. Plaintiff suffered reputational destruction, emotional distress, and economic harm.

**COUNT IX – AIDING AND ABETTING**

(New York Law)

276. Plaintiff repeats and realleges paragraphs 1 through 275.
277. Defendants Elizabeth Eaverone and John Eaverone knowingly provided substantial assistance to Defendant Verdino by providing resources, shelter, encouragement, and concealment.
278. Defendants Shirley Charles, Taylor Cassanova, and Tracy Cassanova knowingly assisted the harassment and agency-weaponization campaign through access facilitation, false reporting, and coordinated conduct.
279. Defendant Zehavit Michael financed, directed, and orchestrated portions of the scheme.
280. Each aider had actual knowledge of the underlying wrongful acts and substantially assisted them.
281. Plaintiff suffered damages as a result.

**COUNT X – ABUSE OF PROCESS**

(42 U.S.C. §1983 and New York Law)

282. Plaintiff repeats and realleges paragraphs 1 through 281.
283. Defendants misused criminal, housing, and administrative processes not to achieve legitimate ends, but to coerce Plaintiff into abandoning her home and to gain advantage in probate-related disputes.
284. Defendants employed police responses, arrests, violations, and agency complaints as tools of harassment and dispossession.
285. Plaintiff suffered damages.

**COUNT XI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

(New York Law)

286. Plaintiff repeats and realleges paragraphs 1 through 285.

287. Defendants engaged in extreme and outrageous conduct over an extended period.

288. Defendants intended to cause, or recklessly disregarded the likelihood of causing, severe emotional distress.

289. Plaintiff suffered severe emotional distress and medical harm, including migraines requiring hospitalization.

290. Plaintiff suffered damages.

## COUNT XII – FALSE ARREST / FALSE IMPRISONMENT

(New York Law)

291. Plaintiff repeats and realleges paragraphs 1 through 290.

292. Defendants confined Plaintiff without consent and without legal justification.

293. Plaintiff was aware of the confinement and did not consent.

294. Plaintiff suffered damages.

## COUNT XIII – MALICIOUS PROSECUTION

(New York Law)

295. Plaintiff repeats and realleges paragraphs 1 through 294.

296. Defendants initiated and continued criminal proceedings against Plaintiff without probable cause and with malice.

297. Plaintiff suffered post-arraignment liberty restraints and damages.

## COUNT XIV – TRESPASS, NUISANCE, AND UTILITY INTERFERENCE

(New York Law)

298. Plaintiff repeats and realleges paragraphs 1 through 297.

299. Civilian Defendants knowingly entered and remained on Plaintiff's Property without authorization.

300. Defendants interfered with heating, electrical systems, meters, and access points.

301. Defendants' conduct substantially interfered with Plaintiff's use and enjoyment of her home.

302. Plaintiff suffered damages.

## PART 10 – INJUNCTIVE RELIEF, DAMAGES, JURY DEMAND, PRAYER FOR RELIEF, AND VERIFICATION

### COUNT XV – INJUNCTIVE RELIEF / EJECTMENT

(Fed. R. Civ. P. 65; 42 U.S.C. §1983)

303. Plaintiff repeats and realleges paragraphs 1 through 302.

304. Defendants' conduct is ongoing and continues to threaten Plaintiff's safety, housing stability, access to utilities, and constitutional rights.

305. Plaintiff has no adequate remedy at law.

306. Plaintiff faces immediate and irreparable harm absent injunctive relief.

307. Civilian Defendants remain in or exercise control over portions of Plaintiff's Property without lawful authority.

308. NYPD Defendants continue to refuse enforcement of Orders of Protection and continue to credit retaliatory complaints.

309. Plaintiff seeks immediate injunctive relief including:

310. a. Removal of Defendants Anthony Verdino, Joseph Wolfgang, Michael Buscarello, Frank Cracchiolo, Shirley Charles, Youri Fleury, from the Property;

311. b. Orders prohibiting Defendants from entering or remaining on Plaintiff's Property;

312. c. Orders prohibiting Defendants from initiating false police or agency complaints;

313. d. Orders requiring NYPD Defendants to accept Plaintiff's reports and enforce valid Orders of Protection;

314. e. Orders preserving all NYPD bodycam footage, precinct logs, radio runs, arrest paperwork, and agency communications.

315. f. Orders prohibiting retaliation against Plaintiff.

316. Plaintiff seeks compensatory damages for loss of liberty, physical injury, emotional distress, medical expenses, lost income, property damage, and out-of-pocket losses including lock replacement costs.

317. Plaintiff seeks punitive damages against individual Defendants for willful and malicious conduct.

318. Plaintiff seeks attorneys' fees and costs pursuant to 42 U.S.C. §1988.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Enter judgment in favor of Plaintiff on all Counts;

b. Declare Defendants' conduct unconstitutional and unlawful;

c. Award compensatory damages in an amount to be determined at trial;

d. Award punitive damages against individual Defendants;

e. Grant preliminary and permanent injunctive relief as set forth herein;

f. Award attorneys' fees and costs pursuant to 42 U.S.C. §1988;

g. Grant such other and further relief as this Court deems just and proper.

**VERIFICATION**

I, Devora Shabtai, declare, under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: February 19, 2026
Brooklyn, New York

Devora Shabtai, Pro Se